RICHARD & Co. *v.* UNITED STATES (No. 747).[1]

1. "ENAMEL" DEFINED.

"Enameled" as employed in paragraph 94, tariff act of 1909, has the limited meaning which it appears always to have borne in ceramics; that is to say, an opaque or colored semivitrified coating applied to the surface of pottery either as a decoration or for a utilitarian purpose.

2. ENAMELED AND PRINTED SPARK PLUGS.

The merchandise of the importation could be classed as enameled only by an expert, for the true nature of its finish is unapparent to the eye of a layman. However, the contention is made that the merchandise is "printed china." The testimony to the effect that the word "Rajah," appearing on the goods, was put there to protect a registered trade-mark, or that the word "Rajah" was a trade-mark at all, is too weak, vague, and uncertain to overcome the presumption of correctness attaching to the collector's decision. The spark plugs were properly held dutiable as "printed china."

## United States Court of Customs Appeals, April 22, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26244 (T. D. 31804).

[Affirmed.]

*W. Wickham Smith* and *John K. Maxwell* (*Thomas M. Lane* of counsel) for appellants.

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

This appeal raises the question as to the classification of certain china or porcelain spark plugs which were imported at the port of New York and assessed for duty by the collector of customs at 60 per cent ad valorem as "china, printed" under the provisions of paragraph 93 of the tariff act of 1909, which paragraph reads as follows:

93. China, porcelain, parian, bisque, earthen, stone and crockery ware, including clock cases with or without movements, pill tiles, plaques, ornaments, toys, charms, vases, statues, statuettes, mugs, cups, steins, and lamps, all the foregoing wholly or in chief value of such ware; painted, colored, tinted, stained, enameled, gilded, *printed* or ornamented or decorated in any manner; and manufactures in chief value of such ware not specially provided for in this section, sixty per centum ad valorem.

The importers protested that the spark plugs were china and other wares, not printed, ornamented, or decorated, and that they were dutiable at 55 per cent ad valorem under the provisions of paragraph 94 of said act, which said paragraph reads as follows:

94. China, porcelain, parian, bisque, earthen, stone and crockery ware, plain white, plain brown, including clock cases with or without movements, pill tiles, plaques, ornaments, toys, charms, vases, statues, statuettes, mugs, cups, steins, and lamps, all the foregoing wholly or in chief value of such ware, *not* painted, colored,

[1] Reported in T. D. 32469 (22 Treas. Dec., 754).

80734—VOL 3—13——13

tinted, stained, enameled, gilded, *printed,* or ornamented or decorated in any manner; and manufactures in chief value of such ware not specially provided for in this section, fifty-five per centum ad valorem.

The Board of General Appraisers decided that the spark plugs were enameled and overruled the protest. The importers appealed.

The spark plugs are designed for use in gasoline engines and so far as may be judged by the samples in evidence are either porcelain or chinaware. The plug is in one piece and is pierced by a small hole which runs longitudinally through the center. It is about 2 inches in length and has the form of a truncated cone which rests on a small circular base and supports a conical top of lesser diameter. The base bears the inscription "Made in Germany," and on the shank is printed the single word "Rajah." The appraiser returned the goods as "Printed china, 60 per cent, paragraph 93." The deputy appraiser reported that the importation consisted of "Spark plugs of china with the word 'Rajah' printed thereon."

On the hearing the importer testified that the spark plugs were porcelain and that they were imported for the Rajah Motor Supply Co. He further stated that the words "Made in Germany" were put upon the article for the purpose of complying with that part of section 7 of the tariff act of 1909 which requires that all imported articles shall be marked with the country of origin, and that the word "Rajah" was placed upon the plugs to protect the trade-mark of the Rajah Motor Supply Co., which was "copyrighted."

Walter J. McNaier testified on the part of the importers that he had been a Government examiner for six years prior to April 20, 1911, and that under the act of 1897 such articles, not printed, had been classified as white china under paragraphs 95 and 96 at 55 per cent ad valorem and that that classification had not been changed under the act of 1909 further than by returning them as "plain white" at 55 per cent.

The case does not appear to have been tried by either side on the theory that the articles in controversy were enameled, and we find no testimony whatever in the record showing or tending to show that the merchandise is of that character. Neither the examiner nor deputy appraiser reported the wares to be enameled and so far as the record discloses the advisory classification of the goods under paragraph 94 was based on the fact that they were "printed" and nothing else. If, therefore, the board's finding that the spark plugs are enameled is to be sustained, it must be sustained either by reason of the presumption which obtains in favor of the collector's decision or because evidence to warrant it is afforded by samples of the goods in evidence. Whether the spark plugs themselves furnish any proper proof of being enameled within the intention of paragraph 94 depends, first, on what is meant by "enameled" as the term is there employed; and, second, on

whether a mere inspection, unaided by expert knowledge, will show that the goods fall within the definition. Originally the expression "enamel" was limited to the process of fusing to the surface of metals a hard, vitreous compound, stained while in a melted condition by the admixture of metallic oxides. Subsequently the word seems to have been applied to the art of coating pottery with an opaque or colored glaze similar in composition to that applied to metals. (See "Enamel," Encyclopedia Britannica.)

In modern times, arts, other than ceramics and the fine arts, have misappropriated the expression, and as used by them "enamel" has come to mean any smooth, hard, glossy surface applied to leather, paper, cloth, wood, or other substance, whether by lacquer, paint, varnish, or other means. (See Century Dictionary.)

We can not believe, however, that the term "enamel" as used in *paragraph 94* was ever intended by Congress to have the broad signification given to it by persistent misuse, and we must therefore assume that "enameled," as employed with relation to china and porcelain, has the limited meaning which it appears to have always borne in ceramics—that is to say, an opaque or colored semivitrified coating applied to the surface of pottery either as a decoration or for a utilitarian purpose. Dictionary of Applied Chemistry, Thorpe (Vol. III, p. 304); American Mechanical Dictionary, Knight (Vol. I, p. 800); New American Mechanical Dictionary, Knight (pp. 312–313); Wagner's Chemical Technology (p. 624). We find nothing in the Treatise on Ceramic Industries, by E. Bourry, which is not consistent with this holding. Any apparent contradiction between Bourry and the authorities above cited is entirely explainable by the fact that while enamel as applied in ceramics is a glaze, it is a special kind of glaze which is opaque or colored. See Treatise on Ceramic Industries, by Bourry (pp. 431, 630–631). A smooth hard, opaque, or colored coating which is first burnt into the surface of pottery and is then covered with a transparent vitreous glaze produces the effect and accomplishes the purpose of enameling, and wares so treated are properly classifiable as enameled. See Frank *v.* United States (2 Ct. Cust. Appls., 85; T. D. 31633). It is important to remember, however, that while in a sense all enamels are glazes, not all glazes are enamels. Glazes and enamels are both substances which are designed to give a glassy coating to pottery, but strictly speaking the first is a coating which is transparent and vitreous and the second a coating that is opaque or colored and semivitrified. See Dictionary of Applied Chemistry, Thorpe (Vol. III, p. 304). Glazes and enamels are not synonymous words, and that they are not seems to have been well recognized by Congress in the several tariff acts. (See act of 1890, par. 94; act of 1894, pars. 76, 78, 85; act of 1897, pars. 87, 88, 95, 96; act of 1909, pars. 56, 84, 85, 93, 94.)

Having reached a conclusion as to the meaning of "enameled" as that term is used in paragraph 94 of the tariff act of 1909, the matter which next presents itself for determination is whether the merchandise here involved furnishes such patent evidences of having been enameled that judicial knowledge of that condition may be taken. We are frank to say that an inspection of the spark plugs involved in this case does not disclose to our eyes that they are enameled. Unquestionably they are glazed, but whether that glaze be transparent and colorless with the white of the body of the article on which it is laid shining through, or whether it be a white enamel laid on the white body of the spark plug, or whether it be the fused exterior of the vitreous material of which the article is made, is not so apparent. Indeed, the true nature of the finish on the merchandise is so *unapparent* to the layman that we think it a matter to be determined by expert testimony and not one of which judicial notice may be taken. We must therefore hold that the samples by themselves do not afford sufficient evidence to sustain the finding that the goods are enameled. The decision of the collector that the goods were dutiable at 60 per cent ad valorem under paragraph 93 would ordinarily carry with it the presumption that the spark plugs were "painted, colored, tinted, glazed, *enameled*, gilded, printed, or ornamented or decorated," and ordinarily that presumption would prevail until overcome by evidence establishing that the merchandise was dutiable as claimed by the importer. For the purposes of this case, however, it was stipulated by counsel for the importers and counsel for the Government that "the customhouse in assessing duty upon earthenware and china always follows the advisory classification of the examiner." The examiner classified the spark plugs as "printed china, 60 per cent, paragraph 93." Under the stipulation we must therefore hold that the presumption attaching to the collector's decision goes no further than that the spark plugs were "printed china," and that that issue was all that the importers were called upon to meet.

On the hearing before the board it was contended by the importers that the printing on the spark plugs was not such a printing as was contemplated by paragraph 94. That contention rested then and rests now on the ground that the inscription "Made in Germany" is required by the tariff law of 1909 and that the word "Rajah," printed on the article, is necessary to protect the trade-mark of the Rajah Motor Supply Co. and the rights of the company under the patent laws of the United States. Section 7 of the tariff act of 1909 does expressly require that all articles of foreign manufacture or production which are capable of being marked without injury shall be marked in legible English so as to indicate the country of origin, and we do not believe that Congress intended that compliance with that statutory

requirement should operate to increase the duty on the articles so marked, especially as the enactment seems to have been induced by no other motive than that of providing statistical information, preventing fraud, and facilitating administration.    We are of opinion, however, that the word "Rajah," printed on the plugs, was enough to bring the importation within the paragraph under which the goods were assessed for duty.    The claim of the importers that it was necessary to place the word "Rajah" on the spark plugs in order to protect the trade-mark of the importing company and its rights under the patent laws of the United States we do not think is sustained by the evidence.    It does not appear that the company has any interest whatever in the patents covering the spark plugs.    In fact it is not clear that the device is patented at all.    But if it were patented and the importers had a property interest in the patents, the printing on the commodity of the word "Rajah" would not give notice to the public that it was patented as required by the provisions of section 4900 of the Revised Statutes, and, therefore, in the absence of actual notice that the article was patented, it could constitute no protection to patent rights of the appellants even if they were the patentees or the successors in interest of the patentees.    The claim that the printing of the word "Rajah" is necessary to the protection of a trade-mark we suppose is based on the act of February 20, 1905, as amended, which authorizes the registration of trade-marks and, among other things, prohibits the admission to entry of merchandise bearing any simulated or fraudulent trade-mark.    That act was designed to give protection to domestic manufacturers and traders from the fraudulent simulation or imitation of trade-marks used by them in commerce with foreign nations or among the several States or with Indian tribes.    This same protection was extended to manufacturers and traders of foreign countries which by treaty, convention, or law, afforded similar privileges to citizens of the United States.    By the terms of the act, however, its protection is given only to those trade-marks which have been registered in accordance with its provisions. (Secs. 2, 6, 27, and 28 of the act of Feb. 20, 1905, as amended.)    In this case there was no direct, definite, or positive evidence that "Rajah" was the trade-mark of the Rajah Motor Supply Co., unless the statement of the witness Mills that the word "Rajah" was placed on the goods "to protect our trade-mark" can be so considered.    And even if it were properly proved to be a trade-mark, there was no proof that either the importer or the foreign manufacturer had registered it in the manner prescribed by law.    There was testimony on the part of Mr. Mills that the trade-mark was protected by "copyright."    As trade-marks and trade names can not be copyrighted, so far as we are informed (sec. 5, act of Mar. 4, 1909), it is possible that the witness may have intended to say "registered," but if he did he gave no infor-

mation as to what was registered as a trade-mark or when it was registered or where. Taken all in all, the testimony that "Rajah" is a registered trade-mark, or a trade-mark at all, is so weak, vague, and uncertain that we do not think it was sufficient to overcome the presumption of correctness attaching to the collector's decision.

The decision of the Board of General Appraisers is *affirmed*.